# DECEMBER, 1920.

## JOHNNIE SAM BEASLEY v. THE STATE.

No. 5974.  Decided December 1, 1920.

1.—Assault to Murder—Evidence—Requested Charge.

Where, upon trial of an assault with intent to murder, the prosecuting witness was permitted to testify that he went down to the scene of the shooting on the night in question upon information that the defendant wanted to see him there, this was hearsay and inadmissible, and the requested charge should have been submitted instructing the jury not to consider it, there being an issue on the identity of the defendant.

2.—Same—Evidence—Declaration of Third Party—Res Gestae.

Upon trial of assault with intent to murder, there was no error in admitting in evidence as to what was said by some other person to the defendant prior to the shooting, as a part of the *res gestae* of defendant's statement in reply to the effect that the injured party should be shot.

3.—Same—Bills of Exception—Qualifications by Court.

Where, it appeared from the record that the qualifications made by the trial judge to the bills of exception, the same as qualified were sent to appellant's counsel and by him and received and filed with the clerk of the trial court, this is tantamount to the acquiescence of counsel in such qualifications; distinguishing Kirkpatrick v. State, 85 Texas Crim. Rep.. 132.

4.—Same—Practice on Appeal.

Where, errors complained of will not likely occur upon another trial, and the case is reversed upon other grounds, the evidence will not be discussed at length, in view of another trial.

Appeal from the District Court of Fayette. Tried below before the Honorable M. C. Jeffrey.

Appeal from a conviction of assault to murder; penalty, five years' imprisonment in the penitentiary.

The opinion states the case.

*Johnson & Duncan*, for appellant.

*Alvin M. Owsley*, Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—This appellant was convicted in the District Court of Fayette County, of the offense of assault with intent to murder, and his punishment fixed at five years' confinement in the penitentiary.

It is charged against appellant that on a certain night in 1918, he shot one Paul Handrick, under circumstances which amounted to an assault with intent to murder. The defense was an *alibi*.

The shooting took place early in the night, at a point near the building used for the holding of court, in the town of Winchester, which is spoken of as the "courthouse," near which building also was the calaboose, or city jail. No witness testified to seeing appellant at the scene of the shooting, except the injured party, Handrick. This prosecuting witness admitted upon the witness stand, that he was drinking on the night in question; several of the witnesses stated that he was drunk, and some of them stated that he was so drunk as to be staggering. Handrick also admitted, while a witness, that he told Max Hoshke, the first person who got to him after the shooting that he did not know who shot him. At least four witnesses testified that a few minutes after the shooting, they heard Handrick state that he wished he knew who shot him. Will Killingsworth swore that he was at the office of Dr. Hardy shortly after the shooting, and while the wound of Handrick was being dressed, he heard the doctor ask Handrick who shot him, and heard the reply that Henry McIntyre shot him.

Virg Croft, a farmer, who lived near the place where the shooting occurred, stated that he heard Handrick say a few minutes after the shooting, at the saloon of one Moehler, that this "—— damn Henry McIntyre shot me."

Paul Haschke, night clerk for the Railway Company at Winchester, said he heard Handrick state on the night of the shooting, "Some son-of-a-bitch had shot him," and that the next day, after the prosecuting witness, as constable, had arrested appellant and locked him up, he came back by where the witness Haschke and others were standing, and one of them asked Handrick if he thought he got the right man, and that Handrick replied that "it was him or McIntyre one, but I will get it out of Johnnie Sam Beasley."

No confession of the appellant was introduced, but, on the contrary, he took the stand and swore that he was at a certain saloon some distance from the shooting at the time. There were also a large number of witnesses 'who located him in the saloon at the time of the shooting. On the trial, Handrick positively identified appellant as the man who shot him, but he also stated that on the night of the shooting he refused to tell who his assailant was, because he was afraid appellant would catch on and get away. Handrick also testified that at the time of the shooting, one Noble Clark, one Dunk Eanes, one Henry McIntyre, and appellant were present. Of these persons named, Henry McIntyre was the only one who was used as a witness. He said that he was not at the scene, and did not hear any shots, but that subsequent thereto, Handrick tried to have him to state to the district attorney how it came that appellant did not kill him, and wanted him to say that he, witness, knocked appellant's gun up, but the witness refused to so state, and told the district attorney that he was not there and knew nothing of it. No explanation appears in the record why Noble Clark, Dunk Eanes, or Dr. Hardy, the physician who dressed the wound of the prosecuting witness, were not used as witnesses.

For the State, in addition to the identification of appellant by Handrick, a witness named Kaiser swore that he heard appellant say before the shooting, speaking of Hardrick, that he ought to be shot; and another witness, named Wilson, testified for the State, that after the shooting, he heard appellant say that he tried to shoot Handrick in the eye, but some one knocked his head to one side, and the shot struck on the side of Handrick's head. This is substantially the case, as made by the evidence.

Complaint is made that the prosecuting witness Handrick, was permitted to state that he went down to the secene of the shooting on the night in question, upon information that appellant wanted to see him there. This was objected to as hearsay, and a special charge was requested, instructing the jury not to consider the fact that Handrick said that he had information from some one that appellant wanted to see him at said place. This charge was refused. We think the objection to this testimony should have been sustained. In view of the fact that the defense was *alibi*, the admission of this testimony became peculiarly objectionable, for that, while hearsay, its sole tendency and force bore on the fact of appellant's presence at the scene of the shooting.

We think the evidence of Mr. Kaiser, as to what was said by some other person to appellant, prior to the shooting, was admissible, as being part of the *res gestae* of appellant's statement in reply to the effect that he ought to be shot. It was a part of the same conversation, and necessary to make the statement of appellant understood by the jury.

Complaint is in the record, and an affidavit made by appellant's counsel, setting forth facts relative to the action of the trial court in placing qualifications upon certain bills of exception without the consent of counsel for appellant. In said affidavit, it is stated as follows:

"That the qualifications on said bills were made in the absence of and without the consent of the defendant or his counsel. That said bills of exceptions and two copies of the statements of facts were mailed by the court to affiant for the purpose of being filed and they were received and filed with the Clerk on the 4th day of August, 1920."

This affirmatively shows that all of said bills of exception, as qualified by the court, were sent to appellant's counsel, and by him received and filed with the clerk of said court. In our opinion, the fact of the reception of said bills by appellant's counsel, and his filing of same with the clerk in their qualified condition, is tantamount to the acquiescence of counsel in such qualification. We do not think this brings the case within the rule laid down in Kirkpatrick v. State, 85 Texas Crim. Rep., 172, 211 S. W. Rep., 230.

A number of errors are complained of in the argument of the private prosecutor employed to assist the State, but these will not likely occur upon another trial. The preponderance of the evidence seems to be in favor of the theory of the defense, but we will not discuss same at length, in view of the fact that the case must be reversed and sent back for another trial, and the State's case may be made stronger on another trial.

For the errors mentioned, the judgment of the trial court is reversed, and the cause remanded.

*Reversed and remanded.*